THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*
EDWARD L. BAKER *et al.*

*v.*

SHARON TYNDALE, Secretary of State, *et al.*

1. STATUTES—*construction of the joint resolution of the General Assembly of 1867—relative to printing Adjutant General's reports.*—The publication of certain reports of the Adjutant General, authorized by the joint resolution of the General Assembly of 1867, was not intended to be done by the public printer, on the terms of his contract with the State, for the public printing, but was *special* work, for which, by whomsoever performed, the price specified in the resolution could *only* be charged.

This was a proceeding by *mandamus*, the facts of which are fully stated in the opinion.

Messrs. PALMER & HAY, for the relators.

Mr. R. G. INGERSOLL, Attorney General, for the respondents.

Mr. Chief Justice Breese delivered the opinion of the Court:

The relators are, a part of them, Baker, Bailhache & Company, the contractors for the public printing of the State, and the others, Johnson & Bradford, are the contractors for the binding of such printed volumes as may be ordered by the legislature.

There is no dispute about these facts, nor as to the amount they are severally entitled to under their respective contracts.

While the relators occupied these positions, the general assembly passed a joint resolution, by which the Adjutant General was required to make a full report of the records and transactions of his office, embracing the names, &c., of every person in this State who was in the military or naval service of the United States, during the late war, the report to be published in size and style similar to the volumes published by the State of Indiana, and two thousand five hundred copies were to be printed, under the supervision of the Adjutant General. The resolution then provides for the distribution of these copies, and concludes thus:

" *Provided*, That said report shall not exceed eight volumes, and shall not cost exceeding two dollars per volume." Sess. Laws 1867, p. 192.

It appears, from the facts agreed, that before any steps had been taken for the publication of this report, and before the Adjutant General had given any notification that the manuscript was ready for publication, the respondents, the Auditor and the Treasurer, notified the relators that, in their opinion, no publication of the report had been authorized by the General Assembly, except by virtue of this joint resolution, and that the resolution did not, in their opinion, authorize the publication of the report, unless the total cost to the State for the work, including the cost of the paper used therein and the cost of the printing and binding, should not exceed the sum of two dollars per volume.

The relators objected to this construction, claiming if they did the work it must be under their contract with the State for the public printing, and this is the only question submitted to us, and about which we have no doubt.

The printing and binding for which the relators were the contractors, are the laws, journals, bills, messages, reports, blanks, &c., as enumerated in section 4 of the act of 1865, and relate to the current and ordinary business of the General Assembly and the State Government, and for which certain specified prices are allowed. Printing the report of the Adjutant General, in the manner proposed, was a special job, which, when performed by the contractors, would entitle them to the amount specified in the joint resolution authorizing the publication. The terms are emphatic : " The report shall not exceed eight volumes, and shall not cost exceeding two dollars per volume." This law, or joint resolution, which has the force of law, was known to the relators, and they were admonished in advance, by the State officers, that in adjusting their accounts for publishing the volumes, the basis would be this joint resolution, two dollars per volume, and no more.

Suppose the relators had chosen to swell the number of volumes to a dozen or more, they surely could not claim for more than eight, as by the resolution, they were restricted to that number, and, if a dozen volumes were necessary to embrace all the report, after publishing the specified number, it would have been their duty to pause until an application should be made to the Legislature. Had the Adjutant General delivered the manuscript for twelve volumes, we perceive no authority under this resolution, to justify the relators in publishing twelve volumes. So, in regard to the price per volume, that was fixed by the resolution at two dollars per volume, and if the relators could not print and bind the volumes at that price, they should not have attempted it, or, having accomplished it, they must appeal to the General Assembly for relief, if they have been misled by their position,

and by the construction the Adjutant General seems to have placed upon the joint resolution.

We see nothing in the case to warrant the relators in undertaking this work, on the terms of their contract with the State for the ordinary public printing of the State, when the resolution under which the work was authorized, informed them most distinctly, that two dollars was the maximum for each volume, and the officers of the State informed them, before they began the work, that their accounts would be adjusted on the basis of that resolution.

Believing the position taken by the respondents to be the true one, we must refuse the mandamus.

*Mandamus refused.*